**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com

Counsel for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID REILLY, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiff, <br><br> v. <br><br> ABEONA THERAPEUTICS INC. f/k/a/ PLASMATECH BIOPHARMACEUTICALS, INC., STEVEN H. ROUHANDEH, and STEPHEN B. THOMPSON <br><br> Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br><br> <u>**JURY TRIAL DEMANDED**</u> |

Plaintiff David Reilly ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by Abeona Therapeutics Inc. ("Abeona"), formerly known as PlasmaTech Biopharmaceuticals, Inc. ("PlasmaTech" and together with Abeona, the "Company"), as well as media and analyst reports

1

about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities, other than Defendants and their affiliates, who: (1) purchased or otherwise acquired publicly traded PlasmaTech securities from March 31, 2015 to June 19, 2015, both dates inclusive (the "PlasmaTech Class Period"); and/or (2) purchased or otherwise acquired publicly traded Abeona securities from June 22, 2015 to December 9, 2016, both dates inclusive (the "Abeona Class Period" and together with the PlasmaTech Class Period, the "Class Period"), seeking to recover compensable damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

4.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as Defendants conduct business in this District and a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

5.      In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications, and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff as set forth in the attached PSLRA Certification, acquired PlasmaTech and/or Abeona securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

7.      Defendant Abeona focuses on developing and delivering gene therapy and plasma-based products for severe and life-threatening rare diseases. The Company is incorporated in Delaware and maintains an office in New York at 1325 Avenue of the Americas, 27th Floor, New York, NY 10019. Abeona securities trade on the Nasdaq Stock Market ("NASDAQ") under the symbol "ABEO." From October 24, 2014 to June 19, 2015, the Company was named PlasmaTech Biopharmaceuticals, Inc. Plasma securities traded on the NASDAQ from December 19, 2014 until June 19, 2015 under the symbol "PTBI."

8.      Defendant Steven H. Rouhandeh ("Rouhandeh") has been the Company's Executive Chairman and Principal Executive Officer throughout the Class Period..

9.      Defendant Stephen B. Thompson ("Thompson") has been the Company's Chief Accounting Officer, Secretary and Treasurer throughout the Class Period.

10.     Collectively, Defendants Rouhandeh and Thompson are referred to herein as "Individual Defendants."

11.     Collectively, Defendant Abeona and Individual Defendants are herein referred to as "Defendants".

12.     Each of the Individual Defendants:

     a.     directly participated in the management of the Company;

     b.     was directly involved in the day-to-day operations of the Company at the highest levels;

     c.     was privy to confidential proprietary information concerning the Company and its business and operations;

     d.     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

     e.     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

     f.     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

     g.     approved or ratified these statements in violation of the federal securities laws.

13.     Abeona is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

14.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Abeona under *respondeat superior* and agency principles.

## SUBSTANTIVE ALLEGATIONS

### Background

15.     Sanfilippo syndrome, also called MPS III, is metabolism disorder in which the body cannot properly break down long chains of sugar molecules. There are 4 main types of Sanfilippo syndrome, described as type A, B, C or D.

16.     Abeona's lead programs are ABO-101 (AAV NAGLU) and ABO-102 (AAV SGSH), adeno-associated virus (AAV)-based gene therapies for Sanfilippo syndrome (MPS IIIB and IIIA, respectively).

### Defendants' False and Misleading Class Period Statements

17.     On March 31, 2015, the Company filed an annual report on Form 10-K with the SEC announcing the Company's financial and operating results for the fiscal year ended December 31, 2014 (the "2014 10-K"). The 2014 10-K was signed by Defendants Rouhandeh and Thompson. The 2014 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Rouhandeh and Thompson attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

18.     The 2014 10-K provide the following biographical information about Defendant Rouhandeh:

> Mr. Steven H. Rouhandeh became our Executive Chairman on January 1, 2015. Mr. Rouhandeh has been a director and Chairman of the Board since March 4, 2008. He has been Chief Investment Officer of SCO Capital Partners, a group of New York based life sciences funds since 1997. Mr. Rouhandeh possesses a diverse background in financial services that includes experience in asset management, corporate finance, investment banking and law. He has been active throughout recent years as an executive in venture capital and as a founder of several companies in the biotech field. His experience also includes positions as Managing Director of a private equity group at Metzler Bank, a private European investment firm and Vice President, Investment Banking at Deutsche Bank. Mr.

Rouhandeh was also a corporate attorney at New York City-based Cravath, Swaine & Moore. Mr. Rouhandeh holds a J.D., from Harvard Law School, Harvard University and B.A. Political Science, from Southern Illinois University.

19.     On March 30, 2016, the Company filed an annual report on Form 10-K with the

SEC announcing the Company's financial and operating results for the fiscal year ended

December 31, 2015 (the "2015 10-K"). The 2015 10-K was signed by Defendants Rouhandeh

and Thompson. The 2015 10-K contained signed SOX certifications by Defendants Rouhandeh

and Thompson attesting to the accuracy of financial reporting, the disclosure of any material

changes to the Company's internal control over financial reporting and the disclosure of all

fraud.

20.     The 2015 10-K provide the following biographical information about Defendant

Rouhandeh:

> Mr. Steven H. Rouhandeh, became our Executive Chairman, Principal Executive Officer, on January 1, 2015. Mr. Rouhandeh has been a director and Chairman of the Board since March 4, 2008. He has been Chief Investment Officer of SCO Capital Partners, a group of New York based life sciences funds since 1997. Mr. Rouhandeh possesses a diverse background in financial services that includes experience in asset management, corporate finance, investment banking and law. He has been active throughout recent years as an executive in venture capital and as a founder of several companies in the biotech field. His experience also includes positions as Managing Director of a private equity group at Metzler Bank, a private European investment firm and Vice President, Investment Banking at Deutsche Bank.  Mr. Rouhandeh was also a corporate attorney at New York City-based Cravath, Swaine & Moore. Mr. Rouhandeh holds a J.D., from Harvard Law School, Harvard University and B.A. Political Science, from Southern Illinois University.

21.     The 2015 10-K stated the following with regards to ABO-101 and ABO-102:

ABO-101 for MPS III B and ABO-102 for MPS III A (Sanfilippo syndrome)

Mucopolysaccharidosis (MPS) type III (Sanfilippo syndrome) is a group of four inherited genetic diseases, described as type A, B, C or D, which cause enzyme deficiencies that result in the abnormal accumulation of glycosaminoglycans (sugars) in body tissues. MPS III is a lysosomal storage disease, a group of rare inborn errors of metabolism resulting from deficiency in normal lysosomal

function. The incidence of MPS III (all four types combined) is estimated to be 1 in 70,000 births.

Mucopolysaccharides are long chains of sugar molecules used in the building of connective tissues in the body. There is a continuous process in the body of replacing used materials and breaking them down for disposal. Children with MPS III are missing an enzyme called heparan sulfate which is essential in breaking down the used mucopolysaccharides. The partially broken down mucopolysaccharides remain stored in cells in the body causing progressive damage. Babies may show little sign of the disease, but as more and more cells become damaged, symptoms start to appear.

In MPS III, the predominant symptoms occur due to accumulation within the central nervous system (CNS), including the brain and spinal cord, resulting in cognitive decline, motor dysfunction, and eventual death. To date, there is no cure for MPS III and treatments are largely supportive.

Abeona is developing next generation AAV-based gene therapies for MPS III (Sanfilippo syndrome), which involves a one-time delivery of a normal copy of the defective gene to cells of the central nervous system with the aim of reversing the effects of the genetic errors that cause the disease.

After a single dose in Sanfilippo preclinical models, ABO-101 and ABO-102 induced cells in the CNS and peripheral organs to produce the missing enzymes which helped repair the damage caused to the cells. Preclinical in vivo efficacy studies in Sanfilippo syndrome have demonstrated functional benefits that remain for months after treatment. A single dose of ABO-101 or ABO-102 significantly restored normal cell and organ function, corrected cognitive defects that remained months after drug administration, increased neuromuscular control and increased the lifespan of animals with MPS III over 100% one year after treatment compared to untreated control animals. These results are consistent with studies from several laboratories suggesting AAV treatment could potentially benefit patients with Sanfilippo Syndrome Type A and B. In addition, safety studies conducted in animal models of Sanfilippo syndromes have demonstrated that delivery of AB0-101 or AB0-102 are well tolerated with minimal side effects.

22.    The statements referenced in ¶¶ 17-21 above were materially false and/or misleading because they misinterpreted and failed to disclose the following adverse facts pertaining to the Company's business and operations which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the science behind Abeona's proposed gene therapy

treatment for Sanfilippo syndrome is unviable; (2) defendant Rouhandeh previously worked in a high ranking position for a biotech promoter who was convicted of securities fraud and involved in manipulating biotech stocks; and (3) as a result, Defendants' statements about Abeona's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## The Truth Emerges

23.     On December 12, 2016, analyst firm Mako Research published a report on the Company (the "Mako Research Report") asserting, among other things, that the Company's science underpinning ABO-101 and ABO-102 is unviable, stating in part:

**This report will cover the following key points about Abeona's science:**

Three serious flaws in Abeona's gene therapy approach guarantee failure of ABO-101 and ABO-102. Furthermore, ABEO does not appear to be pursuing a rational regulatory pathway forward, calling into question the true motives of insiders as they continue to collect their ridiculously excessive insider compensation paid for with shareholder money. Similar to AVXS, ABEO has pursued flakey trials at a single location - the Nationwide Children's Hospital (NCH) in Ohio. As I wrote about previously in my report on AVXS, NCH faces a host of related party conflicts of interest, negative media coverage after the Sarepta fiasco, and a tainted reputation that casts significant doubt over the limited data studies conducted at NCH. Lastly, even if Abeona ever made its way through all of the red flags above, the TAM of Sanfilippo syndrome is incredibly small, and ABEO faces a host of larger competitors pursuing superior treatments in this small and crowded market.

With ABEO, investors appear under the mistaken belief that adeno associated virus (AAV) based gene therapy approaches are a cure all for monogenic diseases like Sanfilippo syndrome. They don't dig into the scientific details and as such are susceptible to believing the superficial analysis conducted by conflicted sell side banks and stock promoters. This certainly seems to be the case with Abeona as a deep dive into the medical literature reveals not one but three key flaws in Abeona's approach, any of which would render their claims unviable.

First, a primer on gene therapy. In order for gene therapy to work, the gene in question has to get to the target cell AND it has to express once it is there. The first part, called delivery, is typically accomplished by a virus. The second is accomplished through the use of a promoter. In other words, there are two key

steps that must both be successful for the gene therapy treatment to work. The promoter (pun intended in the case of Abeona) directs expression of the gene of interest once the virus has transduced the tissue. Promoters come in two types: constitutive (always on) and tissue specific (only work in certain tissues). With that as a background, let us explore why Abeona's approach fails these two criteria, which in turn makes ABO-101 and 102 destined to certain failure based on our research. Furthermore, we then show that ABEO has no rational regulatory pathway forward.

**Abeona Flaw #1: AAV gene therapy has already been tried in MPS3a and hasn't worked**

We rarely have a case where we can compare direct delivery with indirect delivery for the same disease but it turns out Abeona is not the first to consider gene therapy for MPS3a. Unlike Abeona who is relying on inferior intravenous administration of the AAV vector, Lysogene attempted direct intraparenchymal delivery of their AAV vector. That means they injected it directly into the patient's brain. By directly introducing the virus into the brain, any concern that the virus would not reach brain tissue is eliminated. In other words, the delivery problem has been eliminated. Simply stated, if the direct approach attempted by Lysogene doesn't work then intravenous gene therapy (*i.e.*, Abeona's approach of indirectly applying the treatment that may or may not successfully reach the brain) clearly doesn't stand a chance, in our view. The results presented by Lysogene were underwhelming as shown in this abstract which concluded, "Brain atrophy evaluated by magnetic resonance imaging seemed to be stable in Patients 1 and 3 but tended to increase in Patients 2 and 4." Hardly a ringing endorsement and this is from a study where the barrier to delivery was non-existent. How well could Abeona's approach, which has a much more difficult path to delivery, be expected to work in light of these Lysogene results?

**How will Abeona do better than this when they are administering the virus into a peripheral vein and hoping or praying that it gets into the central nervous system? We already know that superior delivery via directly into the brain showed mediocre results at best.**

Making matters worse for Abeona is that the study described above used a promoter that is active in all tissue types. As we'll see below, Abeona's promoter choice is even more problematic as well which brings us to flaw number 2.

**Abeona Flaw #2 - The promoter chosen by Abeona doesn't work in glia**

The nervous system consists of two broad cell classifications: neurons and glia. Neurons are the cells that transmit electric signals to other cell types and glial cells play a supportive role. MPS3a affects both cell types (see electron micrograph in the source below).



**Fig. 3.** Electron microscopy of cells in cerebral cortex. (A) Electron micrograph of typical storage within a <mark>cortical neuron</mark> like those shown in Figure 2B. Storage vacuoles ranged from those containing floccular material to others with stacks of membrane (arrowhead) sometimes resembling zebra bodies. (7920×). (B) Electron micrograph of a perineuronal <mark>glial cell</mark> showing characteristic vesiculated cytoplasm (arrowhead). (4680×). G, Golgi apparatus; N, nucleus.

Source: NCBI

The AAV vector being used by Abeona supposedly transduces both cell types but getting into the cell is not enough: Once inside the virus must express the protein of interest. If the virus gets into the correct cells but does not express, there is no benefit to the patient.

Expression of the protein of interest is done by placing a good copy of the gene in front of a "promoter" which will drive its expression.

Abeona chose a promoter called U1a as shown in their clinical trials.gov listing:



Unfortunately for Abeona, they chose a promoter called U1a that apparently IS NOT ACTIVE in glia which means it can only treat some of the cells in the CNS. How can one honestly expect good results from this? Moreover, what does this say about the scientific acumen of Abeona's scientists? This is a rookie mistake.

10

Furthermore, Abeona has set the bar for the primary end point for their trial comically low. Below is Abeona's primary endpoint from clinical trials.gov. How difficult do you think this primary endpoint - development of unacceptable toxicity - will be to achieve? I could develop unacceptable toxicity levels with a rock. Even if Abeona achieves this primary outcome measure, it's essentially meaningless.



Why would Abeona set the bar so low? And if Abeona wants to run a credible trail, why go to Nationwide Children's Hospital (aka the place it seems to me that you go if you want a positive, but worthless, trial) to determine whether the drug works or not? I covered the dubious science and rampant conflicts of interest that have occurred in other trials at NCH in my recent report on Avexis (NASDAQ:AVXS): please see that report for further details, which I believe are also relevant for Abeona.



***** 

The bottom line is that, similar to Avexis, Abeona's proposed gene therapy treatment is deeply flawed:

*The delivery mechanism is inferior to existing studies from other companies with superior delivery mechanisms which still showed mediocre clinical results, rendering ABEO's science unviable.*

*The promoter Abeona has chosen doesn't even work in glia anyway, rendering ABEO's science unviable.*

*Abeona is attempting to clear a bar that is so low that it's essentially meaningless, meaning whatever their trial shows should be clinically worthless.*

*All occurring at what we believe is the most dubious clinical site in the country.*

(Emphasis in original).

24.     The Mako Research Report also asserted that Defendant Rouhandeh was a Managing Director for a biotech stock promoter convicted of securities fraud and involved in manipulating biotech stocks, stating in part:

**Introducing the Cast of Characters: David Blech and Steven Rouhandeh David Blech: The Godfather of Biotech Stock Fraud**

Many of today's investors are too young or too new to the investment business to remember the spectacular flame out of D. Blech & Co in the early 1990s. The firm, named after now-convicted felon David Blech who was a key insider in ABEO (in previous incarnations), specialized in making investments in low quality biotech stocks. Blech, who is bipolar and reportedly has a gambling addiction, pled guilty to securities fraud in 1998 but avoided prison time. As recently as 2013, Blech was apparently headed to prison for a second securities fraud conviction according to the NY Times. Known as an aggressive stock promoter involved in many dubious companies, "Blech stocks" have long been a favorite among short sellers and have frequently produced stellar returns for those betting they will decline in price. Several of these legacy Blech stocks, including Abeona, still exist in the market, though often only after failing and reemerging, and/or saddling early investors with crushing dilution and losses.

Eventually and not that surprisingly, D. Blech & Co. imploded. Sources claim the firm's collapse caused several biotech stocks to drop by 20-40% or more in a single day, in what later became known as "Blech Thursday." A Reuters blog identified that these companies lost more than $168 million in market capitalization on this one trading day alone. To detail all of the schemes Blech was involved with would require a novel-length report but I believe Blech's own employees said it best when they claimed that Blech ran "a sleazy boiler room operation."

We're not aware of anyone within biotech over the last few decades who has a worse reputation than David Blech - and we've looked. His involvement in the predecessor companies that ultimately became Abeona is an undeniable red flag, in our view.

**Steven Rouhandeh: Blech's Protégé and Now Master of Biotech Wipeouts**

Abeona's Executive Chairman and largest shareholder via his investment firm SCO Capital and affiliates is Steven Rouhandeh. ABEO specifically suggests that Rouhandeh's "extensive domestic and international financial experience in the health care industry" are his qualifications to serve on the board. So what exactly are Rouhandeh's qualifications?

Early in his career, Rouhandeh worked in a position of authority (Managing Director) at D. Blech & Co. and apparently didn't leave until nearly the very end, according to the Wall Street Journal. Since that time, as we will see below, Rouhandeh has blazed a trail of shareholder destruction in lousy biotech stocks that would rival even Blech himself.

In my opinion, the key take away here is that Rouhandeh worked in a high ranking position for a biotech stock promoter who was convicted of securities fraud and involved in manipulating biotech stocks. This is not an impressive qualification and would make any investor conducting real due diligence at least a little uneasy. I suspect that most Abeona investors are completely unaware of this fact because it has apparently been omitted from Rouhandeh's recent, publicly available business background profiles. The key question now becomes, how and why was this key piece of Rouhandeh's qualifications omitted from his biography and past?



*Steven Rouhandeh*

Source: Google Images and Institutional Investors Alpha

After reviewing numerous profiles, I found that Rouhandeh's role as Managing Director at D. Blech & Co. mysteriously disappears even though it seems he previously included it before the firm was the subject of widespread media coverage based on David Blech's fraudulent behavior. This complete lack of disclosure is especially unsettling since Rouhandeh still discloses that he served as a Managing Director at Metzler Bank which he worked at **before** he began working at D. Blech & Co. This is consistent across the public business profiles I reviewed, it does not appear to be an administrative error. It's worth re-iterating that these actions are highly relevant to someone making a decision to invest in a biotech company and I find it appalling that these proper disclosures have been neglected.

(Emphasis in original).

25.    On this news, shares of the Company fell $0.70 per share or over 13% from its previous closing price to close at $4.45 per share on December 12, 2016, damaging investors.

26.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

27.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who (1) purchased or otherwise acquired PlasmaTech securities publicly traded on the NASDAQ from March 31, 2015 to June 19, 2015, both dates inclusive; and/or (2) purchased or otherwise acquired Abeona securities publicly traded on the NASDAQ from June 22, 2015 to December 9. 2016, both dates inclusive (the "Class") and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal

representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

28.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, PlasmaTech and Abeona securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

29.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

30.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

31.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

        a.      whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.      whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of the Company;

c.      whether the Individual Defendants caused the Company to issue false and misleading financial statements during the Class Period;

d.      whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

e.      whether the prices of PlasmaTech and/or Abeona securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

f.      whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

32.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

33.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a.      Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b.      the omissions and misrepresentations were material;

      c.      PlasmaTech and/or Abeona securities are traded in an efficient market;

      d.      PlasmaTech and/or Abeona's shares were liquid and traded with moderate to heavy volume during the Class Period;

      e.      the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of PlasmaTech and/or Abeona's securities; and

      f.      Plaintiff and members of the Class purchased, acquired and/or sold PlasmaTech and/or Abeona securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

34.      Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

35.      Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## FIRST CAUSE OF ACTION

**Violation of Section 10(b) of The Exchange Act Against and Rule 10b-5
Promulgated Thereunder Against All Defendants**

36.      Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

37.      This cause of action is asserted against all Defendants.

38.      During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to, and throughout the Class Period, did: (1) deceive the investing

public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase and/or sell PlasmaTech and/or Abeona's securities at artificially inflated and distorted prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, individually and as a group, took the actions set forth herein.

39.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of the Company as specified herein.

40.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of the Company's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about the Company and its business operations and financial condition in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of PlasmaTech and/or Abeona securities during the Class Period.

41.     Each of the Defendants' primary liability, and controlling person liability, arises from the following: (a) Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (b) by virtue of their responsibilities and activities as senior officers and/or directors of the Company, were privy to and participated in the creation, development and

18

reporting of the Company's plans, projections and/or reports; (c) Defendants enjoyed significant personal contact and familiarity with the other members of the Company's management team, internal reports and other data and information about the Company's operations, and (d) Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

42.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing the Company's financial condition from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' false and misleading statements during the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by failing to take steps necessary to discover whether those statements were false or misleading.

43.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price for PlasmaTech and/or Abeona's securities was artificially inflated during the Class Period.

44.     In ignorance of the fact that market prices of PlasmaTech and/or Abeona's publicly-traded securities were artificially inflated or distorted, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which PlasmaTech and/or Abeona's securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in

public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired PlasmaTech and/or Abeona's securities during the Class Period at artificially high prices and were damaged thereby.

45.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the Company's financial results and condition, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired PlasmaTech and/or Abeona securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices or distorted prices at which they did.

46.     By virtue of the foregoing, the Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

47.     As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

48.     This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of securities giving rise to the cause of action.

<u>**SECOND CAUSE OF ACTION**</u>

**Violation of Section 20(a) of The Exchange Act**
<u>**Against the Individual Defendants**</u>

49.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50.     This second cause of action is asserted against each of the Individual Defendants.

51.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of aspects of the Company's dissemination of information to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contend are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

52.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

53.     As set forth above, Abeona and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

54.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act as they culpably participated in the fraud alleged herein. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

55.    This action was filed within two years of discovery of the fraud and within five years of Plaintiff' purchases of securities giving rise to the cause of action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a.    Determining that this action is a proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

b.    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d.    Awarding such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: December 16, 2016                    Respectfully submitted,

                                            **THE ROSEN LAW FIRM, P.A.**

                                            By: /s/ Phillip Kim
                                            Laurence M. Rosen, Esq. (LR 5733)
                                            Phillip Kim, Esq. (PK 9384)
                                            275 Madison Ave, 34th Floor
                                            New York, NY  10016
                                            Phone: (212) 686-1060
                                            Fax: (212) 202-3827

                                            Counsel for Plaintiff